## T. E. MILLER and Julia Miller v. JAMES LITTLE.

(164 N. W. 19.)

**Land mortgaged for much less than its value — second or third mortgage — foreclosure of — obtaining title under — merger of prior mortgages — discharge of mortgage debts — suit by owner to recover — cannot maintain.**

When land is mortgaged for much less than its value, and a party obtains title under the foreclosure of a second or third mortgage, there is a merger of

prior mortgages and a discharge of the mortgage debts. In such a case the owner of the title may not bring a suit and recover judgment for the mortgage debt.

Opinion filed July 21, 1917.

Appeal from the District Court of Stark County, Honorable *W. C. Crawford*, Judge.

Affirmed.

*Thos. H. Pugh*, for appellant.

There was an obligation resting upon plaintiffs to have protected their property and the security given to the defendant thereon. There was no duty devolving upon defendant to make redemption from the foreclosure sale, of any prior mortgage, nor by reason of not redeeming would defendant be deemed guilty of laches in his duty to plaintiffs. If defendant had not purchased the sheriff's certificate it would have run to deed in name of purchaser, and the deed would have stood as a bar to the enforcement by defendant of his mortgage against the land. Bailey v. Hendrickson, 25 N. D. 500, 143 N. W. 136, Ann. Cas. 1915C, 739.

The purchaser at foreclosure by advertisement ordinarily acquires an equitable interest in the land which he may, during the period of redemption, transfer in full to another. His assignee, if there is no redemption, will take the legal title when it matures exactly as the original bidder himself would have done. Gage v. Sanborn, 106 Mich. 269, 64 N. W. 32; Roff v. Miller, 189 Mich. 558, 155 N. W. 518; Lieblien v. Hansen, 178 Mich. 11, 144 N. W. 496; Frisbee v. Frisbee, 86 Me. 444, 29 Atl. 1115; 27 Cyc. 1866.

Purchasing and obtaining an assignment of a certificate of sale is a transaction wholly different in its nature and legal consequence from a redemption. Shroeder v. Bauer, 140 Ill. 135, 29 N. E. 560.

A junior mortgagee may become a purchaser at the sale under the foreclosure of a prior mortgage.

He can also purchase the certificate issued to another at such sale. Whether or not there was a redemption must depend upon what was done, and not upon the intention of the party doing the act. Any act which amounts to either a purchase or a redemption cannot be aided or prejudiced by the intention of the party doing the act. Streeter v. First

Nat. Bank, 53 Iowa, 177, 4 N. W. 915; Sprague v. Martin, 29 Minn. 226, 13 N. W. 34.

A junior mortgagee's claim is not merged by his purchase of land at a sale by a prior mortgagee. Union Bank v. Bates, 24 Manitoba L. R. 619; Cornell v. Woodruff, 77 N. Y. 203; Ten Eyck v. Craig, 62 N. Y. 406.

The mortgage lien transfers no title to the land. Comp. Laws 1913, § 6709; Joyce, Defenses to Commercial Paper, § 682.

"If from all the circumstances a merger would be disadvantageous to the party, then his intention that it should not result will be presumed and maintained." 2 Pom. Eq. Jur. ¶¶ 788, 792; May v. Cummings, 21 N. D. 281, 130 N. W. 826; Davis v. Randall, 117 Cal. 12, 48 Pac. 906; Scrivner v. Dietz, 84 Cal. 295, 24 Pac. 172; Carpentier v. Brennan, 40 Cal. 221; Kilmer v. Hannifan, 113 Iowa, 281, 85 N. W. 16; Gilman v. Stock Exch. Bank, 64 Kan. 87, 67 Pac. 551; Wettlaufer v. Ames, 133 Mich. 201, 103 Am. St. Rep. 449, 94 N. W. 950; Jones, Mortg. §§ 848, 856, 857, 870, 872 and 873.

A merger only comes into existence where the junior lien holder purchases direct from the mortgagor. 27 Cyc. 1378, 1379 and cases cited; Fouche v. Delk, 83 Iowa, 297, 48 N. W. 1078; Milner v. Home Sav. & L. Asso. 64 Minn. 500, 67 N. W. 346; National Invest. Co. v. Nordin, 50 Minn. 336, 52 N. W. 899; Burnet v. Denniston, 5 Johns. Ch. 35; Weston v. Livezey, 45 Colo. 142, 100 Pac. 404.

*J. P. Cain,* for respondents.

The obtaining of the sheriff's certificate of sale and subsequent deed by the defendant merged in him both the legal and equitable title to the land in question, and that prior mortgage indebtedness was discharged. Such mortgage debts being discharged, they cannot be set up as counterclaims by defendant against plaintiffs in this action. Nor can defendant plead the same as a set-off against plaintiff's valid claim for wages, and at the same time retain as fee-title owner the property he took as security for the debt which he now attempts to collect. Pom. Eq. Jur. ¶ 778; Tiffany, Real Prop. ¶¶ 101, 547, pp. 246, 1251, 1252 and cases cited in notes; 27 Cyc. 1329, § 2, 1378, ¶ C; McDonald v. Magirl, 97 Iowa, 677, 66 N. W. 904; Belleville Sav. Bank v. Reis, 136 Ill. 242, 26 N. E. 646; Agnew v. Charlotte, C. & A. R. Co. 24 S. C. 18, 58 Am. Rep. 237; National Invest. Co. v. Nordin, 50 Minn.

336, 52 N. W. 899; Waters v. Waters, 20 Iowa, 363, 89 Am. Dec. 540; First Nat. Bank v. Kreig, 21 Nev. 404, 32 Pac. 641; Mathews v. Jones, 47 Neb. 616, 66 N. W. 622; Clark v. Clark, 76 Wis. 306, 45 N. W. 121; Byington v. Fountain, 61 Iowa, 512, 14 N. W. 220, 16 N. W. 534; Crowley v. Harader, 69 Iowa, 83, 28 N. W. 446; Moore v. Olive, 114 Iowa, 650, 87 N. W. 720.

Where the mortgagor purchases the equity of redemption the whole estate is vested in him. Jackson v. Tift, 15 Ga. 557; Lyman v. Gedney, 114 Ill. 388, 55 Am. Rep. 871, 29 N. E. 282; Clarke v. Peak, 15 La. Ann. 407; Marston v. Marston, 54 Me. 476; Eldridge v. Eldridge, 14 N. J. Eq. 195; 35 Century Dig. title Mortgages, ¶¶ 815 and 823.

ROBINSON, J. The plaintiffs aver that from October 5, 1914, to December 1, 1915, the plaintiffs did farm work and labor for and at the request of the defendant, for which he promised to pay $544.67; and that he paid only $228.01; and the balance due is $316.66. In September, 1916, the plaintiff recovered a judgment, and the defendant appeals.

The answer is a counterclaim. It avers that on September 13, 1911, the plaintiff made to the defendant a promissory note to pay $325 on September 13, 1916, with interest, and that to secure the same they gave defendant a mortgage on a certain 80 acres of land in Adams county, subject to a prior mortgage for $150. That under the power in the mortgage the defendant declared the note to be due. The reply admits the making of the note and the mortgages, and that the prior mortgage was foreclosed by a sale of the premises. That defendant redeemed and obtained a sheriff's deed to the land; that the total debt against the land did not exceed $600, and that it was worth $2,000.

It also appears that on March 24, 1911, the plaintiffs made to P. D. Norton a mortgage on the same land to secure $22.50, which mortgage was foreclosed for the sum of $67.63 and the sheriff's certificate assigned to the defendant, and under the assignment defendant obtained a sheriff's deed to the land.

On the value of the land the plaintiffs both testified that it was worth $20 an acre; and the defendant testified that he contracted to sell the land at $10 an acre. The court found that the value of the land was from $800 to $1,000, and that the total mortgages against it did not

exceed $650, and that by the merger of the title the mortgage for $325 was paid. The decision of the district court is manifestly fair and just, and it could not be otherwise. National Invest. Co. v. Nordin, 50 Minn. 336, 52 N. W. 899; McDonald v. Magirl, 97 Iowa, 677, 66 N. W. 904; Crowley v. Harader, 69 Iowa, 83, 28 N. W. 446; Moore v. Olive, 114 Iowa, 650, 87 N. W. 720.

The judgment of the District Court is affirmed.

BIRDZELL, J. (concurring specially). The evidence in this case seems to establish beyond question that the property acquired by the junior mortgagee in the foreclosure proceedings was worth considerably more than the amount standing against the land, including his mortgage. Under the circumstances disclosed by the record, it would be grossly inequitable to allow the junior mortgagee, who has acquired the property pledged for an amount only equivalent to the prior liens and foreclosure costs, to hold the property thus obtained, and at the same time enforce the security. 2 Pom. Eq. Jur. 3d ed. § 794. When a redemptioner acquires property by sheriff's deed, under the circumstances disclosed in this case, it is only equitable that his security should be discharged completely, if the value of the property warrants such finding, and pro tanto if the surplus value over prior liens is insufficient.

CHRISTIANSON, J. (dissenting). I dissent from the conclusions reached in the majority opinion prepared by Mr. Justice Robinson.

The material and undisputed facts in this case are as follows: On September 13, 1911, the plaintiffs executed and delivered to defendant a promissory note for $325, payable September 13, 1916. At the same time plaintiffs executed and delivered to defendant a third mortgage upon an eighty (80) acre tract of land in Adams county. The holder of the second mortgage thereafter caused such second mortgage to be foreclosed by advertisement, and the premises were sold upon such foreclosure on August 16, 1913, and certificate of sale issued to one Hall, the purchaser at such sale. The defendant Little thereafter purchased the certificate of foreclosure sale from Hall, and received an assignment thereof on August 10, 1914, which assignment was recorded in the register of deeds office on the same day. On August 27, 1914, the sheriff executed and delivered to Little a sheriff's deed upon the cer-

tificate of sale. The only question, therefore, which arises on this appeal is whether the third mortgage held by Little became merged in, and the notes secured thereby extinguished by, the purchase of the sheriff's certificate issued on the foreclosure of the prior mortgage and the sheriff's deed issued thereon.

It is elementary that merger, as a rule, depends "upon the intention, actual or presumed, of the person in whom the interests are united." Pom. Eq. Jur. 3d ed. § 791; 27 Cyc. 1379 et seq. And where a mortgagee takes a conveyance to land covered by his mortgage, there will be no merger where such a result would be injurious to his interest, by depriving him of his rights which he could claim and exercise by keeping the two estates distinct; for, "the result depending on his intention in the matter, if there is no proof of what such intention was, the law will presume that he intended what would best accord with his interests, and therefore will prevent a merger, in accordance with such presumed intention." Pom. Eq. Jur. 3d ed. §§ 791–793; 27 Cyc. 1381. This principle is recognized in the authorities cited in the majority opinion. Thus, in Moore v. Olive, 114 Iowa, 650, 653, 87 N. W. 721, the supreme court of Iowa said: "It may be well to state that merger, as a rule, depends on the intention of the owner; and if there be no evidence of such intent, equity will not treat a mortgage as merged when it is to the interest of the owner, or those claiming under him, that it should continue in force." Not a single authority cited in the majority opinion is in point on the question here presented. The cases cited, which have any bearing on the questions here involved, presented situations where a person holding both a first and second mortgage foreclosed the second mortgage and purchased the land at such foreclosure sale. In fact these authorities merely recognized and applied the doctrine announced by this court in Sletten v. First Nat. Bank, ante, —, 163 N. W. 534, that the purchaser at a foreclosure sale stands in the same position as a grantee by voluntary sale, and that the amount bid will be presumed to be the price or value of the property, less the amount of the encumbrances. The theory being that the amount of the encumbrances has been deducted from the purchase price, and that the land becomes the primary fund for the discharge of the mortgage debt.

Obviously, that doctrine can have no application here. If it has, then

the purchaser of land at a mortgage foreclosure sale must be deemed to have purchased such land subject to all encumbrances, those subsequent as well as those prior to the mortgage under which he purchased. It must be remembered that the defendant Little either had to obtain the certificate of sale, by purchase or redemption, or have his third mortgage extinguished. I am unable to see upon what possible theory it can be held that he manifested any intent to merge the third mortgage or extinguish the obligation secured thereby, by the fact that he purchased the certificate of sale and procured a sheriff's deed thereon. So far as I have been able to discover, no judicial tribunal has so declared, and I am aware of no legal or equitable principle upon which any such holding can be predicated.