[Civ. No. 5093. Second Appellate District, Division One.—February 24, 1928.]

MOSTYN C. H. CLINCH et al., Respondents, v. H. N. SHAFER, Appellant.

Thomas L. Clay for Appellant.

Jones, Wilson & Stephenson for Respondents.

WOOD (W. J.), J., *pro tem.*—This is an appeal by defendant from a judgment in plaintiffs' favor for the sum of $1,410. The action is based upon the following proposal in writing made by defendant to plaintiffs under date of January 15, 1924:

"In consideration of your efforts to obtain a loan for me enabling me to construct a store and apartment building at the N. W. corner of Moneta and 43rd St., Los Angeles, I agree to and will make this loan, if agreeable to your princip*les*, upon the following basis:

"The building to be constructed by the Vaughn Construction Co. or such other contractor of your nomination as may be acceptable to me and to be built in accordance with plans, and specifications heretofore submitted to you by Mr. H. F. Withey, architect.

"The maximum cost of the building completed, in accordance with said specifications, not to be in excess of $47,000. The contractor having the privilege of using foundations already in but not to have the right of using certain brick and lumber now stored on this property unless by separate arrangements for purchase of same from me.

"The aforesaid loan of $47,000 shall bear interest at the rate of, not to exceed 8% per annum payable quarterly and will be in the form of a first mortgage of from 40 to 50% of the value of the completed property which shall mature in some three to five years. Balance of the loan to be in the form of a trust deed payable monthly or annually and to be retired within three years from date.

"I am willing to assign and use the major portion of the income from this property for the purpose of paying interest on the loan and for the reduction of principle amount of same. Interest on this loan is to be computed from the date or dates these funds are advanced.

"The $47,000 to include any commission which may be required to be paid to you or anyone else for services in the securing of the said loan.

"If these terms are in general, acceptable to your principles I will immediately furnish you with a copy of my last financial statement, also submit for your consideration the certificate of title to said property and will cooperate with you and your principles in every reasonable way, especially as to details, to facilitate a prompt conclusion of this loan and the erection of the proposed building.

"This proposal is subject to the acceptance of your principles within five (5) days from date."

Upon the receipt of this proposal plaintiffs promptly arranged with the National Bond and Mortgage Company to make a loan to defendant in accordance with the terms thereof. On January 17, 1924, plaintiffs informed defendant that the loan had been obtained. Defendant on the same day furnished plaintiffs a copy of his last financial statement. This was approved by the party making the loan, who was then ready, able, and willing to proceed. On January 18, 1924, plaintiffs, after notifying defendant of these facts, demanded the certificate of title covering the property on which the loan was to be made, but the certificate was not forthcoming. A demand for the certificate was made three times during the following week, but it was not delivered either to plaintiffs or to the National Bond and Mortgage Company. Finally, on January 28, 1924, plaintiffs demanded of defendant that he proceed with the loan or pay their commission. Defendant refused, saying he had decided not to build. It was shown by the evidence that the commission sued for was reasonable for this kind of a loan.

At the commencement of the trial defendant objected to the introduction of any evidence on the ground that the complaint does not state facts sufficient to constitute a cause of action. In some particulars the complaint is undoubtedly defective. It is alleged in the first count that

plaintiffs notified defendant that a loan had been secured from the National Bond and Mortgage Company, but there is no specific allegation that the loan was actually secured. Again, plaintiffs allege that defendant agreed to pay them "any commission required by said plaintiffs for their services in the securing of the said loan." This is followed by certain allegations concerning the making of the loan and by the statement "that plaintiffs are entitled to a compensation in the sum of three per cent," etc. There is no allegation that the sum of $1,410 is reasonable compensation for the services rendered or that plaintiffs have been damaged in any sum by the refusal of the defendant to perform his part of the agreement. Just criticism is also directed to the second count, in which it is alleged that defendant "has become indebted to the plaintiffs in the sum of $1,410 for services performed by said plaintiffs in connection with the securing of a loan for said defendant." There is no allegation that the services were performed at the instance and request of defendant; nor is there an allegation that the services were performed or rendered for the defendant. One or the other of these allegations should have been made.

Notwithstanding the deficiencies of the complaint above pointed out, we are of the opinion that the judgment should be affirmed under the salutary provisions of section 4½ of article VI of the constitution, wherein it is provided that "No judgment shall be set aside . . . in any case . . . for any error as to any matter of pleading . . . unless, after an examination of the entire cause, including the evidence, the court shall be of the opinion that the error complained of has resulted in a miscarriage of justice." The findings of the trial court are in favor of the plaintiffs on all of the issues presented and are amply sustained by the evidence. The evidence shows without contradiction that the loan was in fact secured, the services were rendered for the defendant and the amount of the judgment was reasonable compensation. Defendant did not file a demurrer, but chose to stand upon his objection to the evidence made on the day of the trial. The complaint was sufficient to fully inform him of the issues he would be called upon to meet. He was not misled or prejudiced in any way. The facts were simple and his defense was fully presented to the court. A reversal of the judgment now would be followed

by a simple amendment to the complaint, a long delay, and inevitably the same final result. The section of the constitution above referred to has often been applied by reviewing courts with great propriety to criminal actions. It can be applied with equal propriety to civil actions when, as in the case before us, there has been no miscarriage of justice.

The judgment is affirmed.

Houser, Acting P. J., and York, J., concurred.